CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 16 2016

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID A. WALDRON, | ) |
| Plaintiff, | ) Civil Action No. 7:10CV00567 |
| v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, David A. Waldron, was born on June 10, 1960, and eventually reached the eighth grade in school. Mr. Waldron has been employed as a groundskeeper, truck washer, brick mason and drywall worker, production laborer, and roofer. He last worked on a regular and sustained basis in 2004. On February 11, 2005, plaintiff filed an application for a period of disability and disability insurance benefits. Sometime later, he filed an application for supplemental security

income benefits.[1] Mr. Waldron alleged that he became disabled for all forms of substantial gainful employment on September 1, 2004, due to hepatitis C, lack of energy, fatigue, body cramps, liver pains, headaches, low back pain, gastroesophageal reflux disease, and numbness with weakness in both hands. Plaintiff now maintains that he has remained disabled to the present time. As to his application for disability insurance benefits, the record reveals that Mr. Waldron met the insured status requirements of the Act through the second quarter of 2006.[2] See gen., 42 U.S.C. §§ 416(i) and 423(a).

Mr. Waldron's claims for benefits were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. By opinion dated May 24, 2007, the Administrative Law Judge also determined that plaintiff was not disabled within the meaning of the Act. Mr. Waldron then sought review by the Social Security Administration's Appeals Council. By order entered February 5, 2008, the Appeals Council vacated the Law Judge's hearing decision and remanded the case for further proceedings. However, on August 31, 2009, the Law Judge again denied Mr. Waldron's claims for benefits. On this occasion, the Appeals Council denied plaintiff's request for review. Having exhausted all available administrative remedies, Mr. Waldron then appealed to this court.

By order entered on May 20, 2011, this court granted the Commissioner's motion for remand. (TR 149). It seems that portions of the recording of the hearing before the Administrative Law Judge

---

[1] During the administrative proceedings, plaintiff's claim for disability insurance benefits and his claim for supplemental security income benefits were consolidated.

[2] Inasmuch as the Commissioner found that Mr. Waldron was entitled to a closed period of disability which began prior to June 30, 2006, the extent of plaintiff's insured status is not at issue.

2

could not be transcribed. (TR 150). Accordingly, the Appeals Council vacated the Law Judge's decision of August 31, 2009, and remanded plaintiff's case for further proceedings. (TR 116).

Following conduct of another administrative hearing, the Administrative Law Judge rendered a partially favorable decision on January 4, 2012. (TR 166-96). Stated succinctly, the Law Judge found that Mr. Waldron was disabled for all forms of substantial gainful employment from February 9, 2006 through February 18, 2009, due to a combination of physical and emotional problems, including chronic hepatitis C, major depressive disorder, and anxiety with panic attacks. However, the Law Judge went on to determine that plaintiff regained the capacity to perform light work activity on February 19, 2009, due to improvement in the management of his chronic hepatitis C symptoms. (TR 193-94). The Law Judge ultimately concluded that Mr. Waldron was disabled for purposes of his claims for benefits from February 9, 2006 through February 18, 2009, and that his disability ceased on February 19, 2009. (TR 195). Mr. Waldron again sought review by the Social Security Administration Appeals Council. The Appeals Council granted the request, and ultimately affirmed the establishment of a closed period of disability. (TR 200-02). However, the Appeals Council remanded the case to the Administrative Law Judge for further adjudication of plaintiff's entitlement to benefits for the periods both before and after the closed period. (TR 201). Specifically, the Appeals Council directed the Law Judge to give further explanation as to the weight accorded to the reports from the state agency medical and psychological consultants, as well as to the testimony of the vocational expert. (TR 201).

Upon remand, the Administrative Law Judge conducted yet another administrative hearing in which additional testimony was received both from the plaintiff and the vocational expert. The Law Judge produced another opinion in Mr. Waldron's case on April 21, 2014. (TR 28-59). The

Law Judge reached essentially the same conclusions as in his earlier opinion. The Law Judge determined that as to the period between plaintiff's alleged disability onset date and the beginning of the closed period of disability, plaintiff suffered from a combination of physical and emotional problems, which the Law Judge summarized as follows:

> From September 1, 2004 through February 8, 2006 the claimant had the following severe impairments: history of a Boxer's fracture to the right hand; gastroesophageal reflux disease; chronic hepatitis C; obesity; hypertension; mild degenerative joint disease of the hands; back pain; mild rectus diastasis of the abdomen; depressive disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

(TR 33). In his earlier opinion of January 6, 2012, the Law Judge had attributed the onset of Mr. Waldron's closed period of disability on February 9, 2006 to exacerbation of plaintiff's symptoms of hepatitis C. (TR 181-83). However, as to the earlier period between September 1, 2004 through February 8, 2006, the Law Judge noted that Mr. Waldron was not undergoing treatment or actively pursuing treatment for hepatitis C on a consistent basis. (TR 39). As for plaintiff's emotional limitations, the Law Judge gave no weight to the opinion of a treating psychiatrist that Mr. Waldron had experienced significant limitations since 2004, inasmuch as that psychiatrist had not first examined Mr. Waldron June of 2008. (TR 47). As to the earlier period, the Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, from September 1, 2004 through February 8, 2006, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional nonexertional limitations. He could not constantly reach or finger. He could perform only occasional stooping, crouching, balancing, kneeling, crawling, and climbing of ramps and stairs, and no work that required working around hazardous machinery, at unprotected heights, or climbing ladders, ropes or scaffolds. The claimant is further limited to the performance of short, simple instructions in a routine work setting that involves only routine changes, occasional interaction with coworkers, and occasional public interaction.

(TR 35-36).

4

As to the period beginning on February 19, 2009, the Law Judge found that Mr. Waldron has experienced essentially the same physical and emotional impairments, though with less prominent hepatitis C symptoms. The Law Judge summarized plaintiff's physical problems during this later period as follows:

> Beginning February 19, 2009, the claimant has had the following severe impairments: history of a Boxer's fracture to the right hand; mild osteoarthritis of the right wrist; vitamin B12 deficiency; a history of hepatitis C infection; mild degenerative joint disease of the hands and feet; low back pain; mild rectus diastasis of the abdomen; history of a fracture of the left humerus; obesity; a depressive disorder; and an anxiety/panic disorder.

(TR 48). The Law Judge stated that plaintiff's hepatitis C has been "cured." (TR 55). Regarding plaintiff's emotional problems, the Law Judge recognized that Mr. Waldron has not continued with his treating psychiatrist because of transportation problems. (TR 51). As to the period of time beginning on February 19, 2009, and extending through the date of his opinion, the Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, beginning February 19, 2009, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with nonexertional limitations. He can perform frequent, but not constant, reaching or fingering; occasional stooping, crouching, balancing, kneeling, crawling, overhead reaching, and climbing of ramps and stairs. He cannot perform work that requires working around hazardous machinery, at unprotected heights, in excessive dampness or humidity, in excessive temperatures, or climbing ladders, ropes or scaffolds. He can perform of short, simple instructions in a routine work setting that involves only routine changes, occasional interaction with coworkers and others, and no public interaction.

(TR 50).

As to the periods of time both before and after the closed period of disability, the Law Judge questioned a vocational expert as to plaintiff's capacity for performance of specific work roles existing in significant number in the national economy. Considering Mr. Waldron's age, education,

and prior work experience, and given the findings as to residual functional capacity for each period, the vocational expert identified several specific work roles which Mr. Waldron could have been expected to perform. Accordingly, the Law Judge ultimately concluded that plaintiff was not disabled for all forms of substantial gainful employment during the period from September 1, 2004 through February 8, 2006, or during the period from February 19, 2009 through April 21, 2014. See gen., 20 C.F.R. §§ 404.1520(g) and 416.920(g).

On this latest occasion, the Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Waldron has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that there is substantial evidence to support the Commissioner's finding that Mr. Waldron was not disabled for all forms of substantial gainful employment at any time on or before February 8, 2006. As to this earlier period, the court believes that the Administrative Law Judge reasonably relied on the reports of Dr. M. Jon Bern, a gastroenterologist, who diagnosed only mild to moderate symptoms associated

with plaintiff's hepatitis C. Moreover, the Law Judge also relied on the report of Dr. Donald Seibert, another gastroenterologist, who examined plaintiff on October 17, 2005 and noted no basis for aggressive treatment of hepatitis C. As for Mr. Waldron's other physical problems, the court notes that Dr. William Humphries completed a consultative evaluation on January 6, 2006 in which the doctor determined that plaintiff is physically capable of light to medium levels of activity. (TR 727-34). It is true that Mr. Waldron experiences significant emotional symptomatology. However, as recognized by the Administrative Law Judge, plaintiff did not begin to receive regular psychiatric care until June of 2008. While the treating psychiatrist, Dr. Suzanna Jamison, reported that Mr. Waldron had experienced severely debilitating emotional symptoms since September 1, 2004, the court believes that the Law Judge properly discounted this opinion, given the scarcity of emotional symptoms noted in the medical reports from that earlier period. In short, while there is some conflict in the record, the court believes that there is substantial evidence to support the Law Judge's finding that Mr. Waldron's combination of physical and emotional impairments did not render him disabled for all forms of substantial gainful employment on or before February 8, 2006.

There is also substantial conflict in the record as to the later period of time beginning on February 19, 2009. However, based on the evidence which was credited by the Administrative Law Judge, the court must conclude that the record does not support the proposition that Mr. Waldron regained the capacity for regular forms of work activity. As noted above, the evidence does support the Law Judge's finding that the liver problems associated with plaintiff's hepatitis C began to stabilize in 2007. While the court does not necessarily subscribe to the notion that Mr. Waldron has been "cured" of hepatitis C, it is true that the symptoms associated with this condition had

7

substantially abated by 2009. In terms of this assessment, the court believes that the Law Judge's opinion is consistent with the medical record.

The difficulty in this case concerns the Law Judge's treatment of plaintiff's psychiatric problems. As previously noted, Mr. Waldron began to receive psychiatric treatment in June of 2008. Dr. Suzanna Jamison summarized her psychiatric findings in a medical assessment of plaintiff's mental ability for work-related activities, dated October 24, 2008. Based on her treatment, Dr. Jamison noted serious limitations in plaintiff's capacity to remember work-like procedures, as well as in his capacity to understand, remember, and discharge very short and simple instructions. (TR 1537). She reported serious limitations in plaintiff's ability to maintain attention, maintain regular attendance, perform at a consistent pace, accept instructions, and deal with normal work stresses. (TR 1538). The psychiatrist opined that plaintiff experiences no useful ability to make simple, work-related decisions. (TR 1538). Dr. Jamison found that Mr. Waldron has no useful ability to do skilled work or to interact appropriately with the general public. (TR 1539). Without question, Dr. Jamison's work-related assessment indicates that Mr. Waldron is totally disabled because of his emotional limitations.

Shortly after receipt of Dr. Jamison's assessment, the state disability agency arranged for Mr. Waldron to undergo a psychological evaluation by Dr. Bruce A. Sellers. Dr. Sellers completed a report on January 19, 2009. After conduct of a clinical interview, review of past medical records, and consideration of psychological testing results, Dr. Sellers offered the following summary:

> David Waldron presented as a verbal and friendly gentleman who gave the impression of being able to manage his own funds in a responsible way. He has significant difficulties in his life with alcohol and drug abuse and even acknowledges his willingness to use Xanax off the streets if he can get it. He is in treatment with a psychiatrist he reports, though, these records were not received as

8

> part of the current assessment. There are significant difficulties primarily with
> depression at this point and secondarily with anxiety. He seems distant from
> others and has a significant legal history in the past. He seems to attribute most of
> this to his past use of alcohol and drugs, which he feels are much improved now.
> His job history is such that most of his work has been of short duration and
> usually he acknowledges he loses patience easily and has conflicts with others and
> may quit these suddenly. It is likely that he would have difficulty working at a
> competitive work environment consistently given his work history and his
> tendency to be short-tempered and aggravated. It appears that he needs to have his
> depression treated better at this point before he can consider returning to the work
> environment.

(TR 1578-79). Dr. Sellers noted that Mr. Waldron's prognosis is guarded, though with potential to improve with treatment. Dr. Sellers completed an assessment of plaintiff's mental ability for work-related activities. The psychologist reported moderate impairment in plaintiff's ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex, work-related decisions. (TR 1571). According to Dr. Sellers, Mr. Waldron's concentration may be impaired by depression and diminished energy. (TR 1571). The psychologist noted moderate impairment in plaintiff's ability to interact appropriately with the public, supervisors, and co-workers. (TR 1572). Dr. Sellers opined that, as a result of his current depression, plaintiff is socially withdrawn and easily aggravated. (TR 1572). The psychologist reported that handling stress would be a problem for Mr. Waldron. (TR 1572). The Administrative Law Judge determined to accord "some weight" to the opinions of Dr. Sellers and Dr. Jamison.[3] (TR 47).

As previously noted, the Law Judge relied on input from a vocational expert in determining that Mr. Waldron possesses residual functional capacity for specific work roles

---

[3] The Law Judge also stated that he gave "some weight" to the opinion of a state agency psychologist, Dr. Louis Perrott, who essentially adopted the work-related mental assessment of Dr. Sellers. (TR 157).

9

existing in significant number in the national economy. Robert Jackson testified as a vocational expert at the sixth and final administrative hearing in this case. The Administrative Law Judge asked Mr. Jackson to consider the following hypothetical question:

> To begin with, pursuant to the Appeals Council order I ask you to consider the following hypothetical. In other words, is for a hypothetical individual, one who has ranged in age between 44 and 52 or 53 and with no more than eighth grade education, did not complete a GED, with some work experience in the construction laborer and masonry areas primarily, and an individual possessing those background characteristics, able to perform light work as defined in our regulations at 15.44.15.67 and 9.4.69.67 and by that, meaning, lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally, sit for six hours of an eight hour workday, stand and/or walk for six hours of an eight hour workday. Frequent but not constant reaching or fingering. Occasional stooping, crouching, balancing, kneeling, crawling, and climbing of ramps and stairs. No work that requires working around hazardous machinery nor unprotected heights nor in excessive dampness, humidity. No climbing of ladders, ropes, and scaffolds. Intellectual functioning and psychological abilities that result in the performing no more than simple instructions, not detailed instructions. Not detailed instructions. Routine work setting. Routine changes and with occasional interactions with coworkers and others and no public interaction. Now with that, are there jobs, occupations, that you can identify that exist in the nation or the region?

(TR 1696-97). In response, the vocational expert identified several specific jobs which Mr. Waldron could be expected to perform. However, when asked to consider additional work-related limitations which track those found by Dr. Jamison in her psychological assessment, the vocational expert testified that "there would be no jobs based on that." (TR 1698). Mr. Jackson cited poor work attendance, inability to handle simple instructions, and a need for an unreasonable number of breaks as reasons for this opinion. (TR 1698).

Neither the Administrative Law Judge nor plaintiff's attorney asked Mr. Jackson to consider work-related limitations as identified by Dr. Sellers in his psychological report. However, that very question had been put to the vocational expert at the time of the fifth administrative hearing on November 1, 2011. At that hearing, another vocational expert, Mark

10

Highland, also testified that Mr. Waldron could do a variety of jobs, given the residual functional findings of the Administrative Law Judge. (TR 1665-66). However, when asked to consider Dr. Jamison's assessment of plaintiff's mental ability for work-related activities, Mr. Highland testified that plaintiff would be unable to perform any of the jobs as identified. (TR 1669). More to the point, when asked to consider the limitations as stated by Dr. Sellers, the vocational expert again opined that such limitations would prevent performance of "the basic demands of unskilled work." (TR 1670).

In short, given the physical limitations as found by the Administrative Law Judge, as well as the nonexertional limitations identified by Dr. Sellers and Dr. Jamison, the vocational expert at the fifth administrative hearing opined that Mr. Waldron would be unable to perform any work role in the national economy. While the vocational expert at the sixth administrative hearing was not asked to consider the limitations identified by Dr. Sellers, he clearly indicated that those set forth in Dr. Jamison's psychiatric report would render the claimant disabled for all forms of work. Given the testimony of the vocational experts, the court must conclude that the Law Judge's findings as to plaintiff's residual functional capacity for specific work roles are not supported by substantial evidence. Stated differently, given the Law Judge's finding as to plaintiff's disability for all past work activity, the court believes that the Commissioner has not discharged the burden of coming forward with specific evidence establishing the existence of other jobs which the claimant can be expected to perform. See Taylor v. Weinberger, 512 F.2d 664 (4th Cir. 1975). In summary, there is no vocational evidence to support the notion that Mr. Waldron regained the capacity to perform unskilled work activity as of February 19, 2009, despite his debilitating symptoms of depression and anxiety.

11

It is well settled that, while not controlling or binding upon the Commissioner, the reports and opinions from treating physicians should be accorded greater weight in a disability evaluation than those of nonexamining physicians, unless the treating physicians' reports are bereft of any additional supporting evidence. Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992); Campbell v. Bowen, 800 F.2d 1247, 1250 (4th Cir. 1986). This same principle is embodied in the governing administrative regulations. Under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), it is provided that, generally, more weight should be given to opinions from treating sources, since such professionals are more likely to provide a detailed, longitudinal picture of the claimant's medical impairments and limitations. In Mr. Waldron's case, it is undisputed that Dr. Jamison provided regular psychiatric treatment until such time as plaintiff was no longer able to travel to her office. Moreover, the administrative regulations also provide that, generally, more weight will be given to the opinion of a medical source who has actually examined the claimant. 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1). In the instant case, Dr. Sellers conducted a consultative, psychological evaluation. Indeed, he did so at the behest of the state disability agency. Both Dr. Jamison and Dr. Sellers determined that plaintiff was suffering from moderate to severe major depression, and that his concentration, ability to handle stress, and capacity to engage in a routine work setting were significantly compromised. Neither of the mental health specialists who have personally examined Mr. Waldron have suggested that he is capable of performing regular work activity. When asked to consider such vocational circumstances, the vocational experts testifying at the fifth and sixth administrative hearings opined that Mr. Waldron is unable to work. It follows that

plaintiff has met his burden of proof in establishing total disability for all forms of substantial gainful employment.

For the reasons as stated, the court concludes that there is substantial evidence to support the Commissioner's final decision that plaintiff was not disabled prior to February 9, 2006. In this respect, the final decision of the Commissioner will be affirmed. However, as to the Commissioner's final decision that Mr. Waldron ceased to be disabled on February 19, 2009, the court concludes that the Commissioner's disposition is not supported by substantial evidence. The Commissioner's motion for summary judgment will be granted in part and denied in part. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act for entitlement to continuing disability insurance benefits, judgment will be entered in favor of plaintiff. The final decision of the Commissioner will be reversed and the case remanded for the establishment of proper benefits. The Commissioner's final decision denying plaintiff's entitlement to a continuing period of disability for purposes of his claim for supplemental security income benefits will also be reversed to the extent that the denial was based on the finding that plaintiff was not disabled on and after February 19, 2009. However, inasmuch as the Commissioner has apparently not considered whether plaintiff meets the financial eligibility requirements under that benefit program for the later period, the court must remand the case for an appropriate determination. An order and judgment in conformity will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 16th day of June, 2016.

_____
Chief United States District Judge

13
Case 7:10-cv-00567-GEC   Document 23   Filed 06/16/16   Page 13 of 13   Pageid#: 1820